HALVORSON et ux., Appellants v. BIRKLAND, Respondent

(171 N.W.2d 77)

(File No. 10590.  Opinion filed October 8, 1969)
Rehearing denied November 12, 1969

**Morris Myers,** Aberdeen, for plaintiffs and appellants.

**George J Rice,** Aberdeen, for defendant and respondent.

HANSON, Judge.

This litigation stems from the sale of the "Lone Pine Trailer Court" in Aberdeen on July 22, 1964 to plaintiffs, Elvin and Beverly Halvorson, by the defendant, Joseph O. Birkland. One June 12, 1967 plaintiffs commenced an action, designated as Civ. 67-176, seeking a declaration of rights under the contract for sale; a judgment for payments made under the contract in the amount of $12,300; and for $5,440 damages for alleged breach of the contract. On June 26, 1967 plaintiffs commenced a second action designated as Civ. 67-215, in which they seek a rescission of the contract. Defendant answered both actions with a general denial, a plea of waiver and estoppel, and a counterclaim asking for a strict foreclosure of the contract for sale. Upon stipulation of counsel the two actions were consolidated for trial. The issue of damages was submitted to a jury which returned a verdict of $1.00 in favor of plaintiffs. The court then entered findings of fact and conclusions of law denying plaintiffs' right to rescind because of estoppel and granting defendant's prayer for strict foreclosure of the contract for deed. A single judgment was entered. Plaintiffs appeal from the judgment. A further appeal from the order denying motion for a new trial was unnecessary. State Highway Commission v. Madsen, 80 S.D. 120, 119 N.W.2d 924, as such order is reviewable on appeal from the judgment.

Plaintiffs sought rescission and recovery of payments made under the contract of sale on alternate grounds, viz.: (1) Mistake induced by misrepresentations made by defendant and (2) failure of consideration resulting from defendant's failure or refusal to tender an abstract showing merchantable title according to the contract.

In summary, it appears the defendant Birkland operated the "Lone Pine Trailer Court" on Lots 4 to 17 in Block 41 of Roche's East Side Addition to the City of Aberdeen, South Dakota. Block 41 is bounded on the east by Greenwood Street (otherwise referred to as Greenway Street) and on the south by Fifth Avenue Southwest. Both streets are sixty-six feet wide. The northern tier of lots in Block 56 adjoining Block 41 on the south was owned by defendant's wife and the area platted as Fifth Avenue Southeast between Block 41 and Block 56 was used by defendant in the operation of his trailer court. Also the west half of Greenwood Street was used and a large cement block incinerator utilized by the tenants of the trailer court was situated thereon.

In July 1964 defendant decided to sell the trailer court and listed it for sale with C. A. Draeger, a realtor in Aberdeen. Through a mutual acquaintance plaintiffs learned the property was on the market and contacted defendant. They met on two occasions prior to July 22, 1964 and in the course of negotiations an inspection was made of the boundaries and court facilities. There is a dispute as to the representations made by defendant during negotiations as to ownership of the west half of Greenwood Street and Fifth Avenue Southeast. According to plaintiff Halvorson, defendant informed him both streets had been vacated and were owned by him. Plaintiff further testified he contemplated an expansion of the trailer court making more use of the street areas and he would not have purchased the trailer court except for the representation of ownership by defendant. Defendant, on the other hand, testified he told Halvorson the streets would have to be vacated but that wasn't much of a problem.

The parties agreed on the terms of sale which were incorporated in an Earnest Money Contract of Sale prepared by Mr. Draeger which was executed on July 22, 1964. Defendant furnished the realtor with a description of the property to be inserted in the contract as follows: "The Lone Pine Court, located on and all of Block 41 Roaches Addition to Aberdeen, South Dakota less Lots 1-2-3-18-19 & 20 Plus that portion of 5th avenue running on the south side of said Block 41 which has been vacated and plus that portion of Greenway Street running on the east side of Block 41 which has been vacated, the west half of said street vacated is to be conveyed with this property." The contract further provided (1) the sale price of $36,000 was to be paid as follows: $1,000 down, $5,000 as soon as sellers furnished a contract of deed and the balance of $30,000 to be paid at the rate of $225 per month commencing September 1, 1964, and (2) the transaction was to be completed by August 1, 1964 when possession of the property would be given to the purchasers. Mr. Draeger testified that when the Earnest Money Contract was executed in his office on July 22, 1964 the defendant told him, in the presence of plaintiff Halvorson, that Greenwood Street had been vacated.

After signing the Earnest Money Contract plaintiffs retained Elmer Thurow, an attorney at law in Aberdeen, to examine the abstract and prepare a Contract For Deed. In testifying for defendant, over plaintiffs' objection that it violated the attorney-client privilege and the parol evidence rule, Mr. Thurow stated he examined the abstract and advised the parties orally in his office that title to the property was defective as it was based, in part, upon tax deeds and title would have to be quieted by defendant. He was apparently then retained by defendant for this purpose. Mr. Thurow also testified the matter of the streets not being vacated was discussed, but he was informed this matter would be taken care of by someone else. The Contract For Deed prepared by Mr. Thurow was signed by the parties on August 1, 1964. It contained substantially the same provisions as the Earnest Money Contract. It described the property sold as "Lots four to seventeen (4 to 17) inclusive, in Block Forty-one (41), of Roaches East side Addition to Aberdeen, in Brown County,

South Dakota, and that portion of vacated 5th Avenue adjoining Block 41 on the South, and that portion of the West half of vacated Greenway Street adjoining said Block 41 on the East". The contract also obligated defendant seller to convey the property by Warranty Deed and to furnish an Abstract of Title showing merchantable title to said property and if title was not now merchantable, the seller had six months to perfect title.

Plaintiffs made the payments required of them and went into possession of the trailer court on August 1, 1964. They learned the streets had not been vacated in April 1965. They immediately contacted defendant who informed them that Mr. Ivan Huntsinger, another attorney in Aberdeen, would get the streets vacated. On June 1, 1965 the City Commissioners of Aberdeen passed a Resolution vacating Fifth Avenue Southeast, but refused to vacate Greenwood Street.

In February 1967 plaintiffs retained their present counsel and on his advice refused to make further payments under the contract. On April 25, 1967 they notified defendant in writing he had ten days to perfect title and to furnish an abstract showing merchantable title or appropriate legal proceedings would be commenced. These actions were then started in June and were tried in December 1967.

It further appears that the City Commissioners of Aberdeen passed a Resolution vacating Greenwood Street on July 31, 1967. An abstract of title was tendered by defendant during the progress of the trial. Such abstract was certified to on the 15th day of December 1967. This was four days after the trial commenced.

■■ Apart from and without considering the merits of plaintiffs' claimed right to rescind for mistake induced by alleged misrepresentations of defendant it would appear that plaintiffs were entitled to a decree of rescission upon their alternate ground. The Contract For Deed unequivocally required defendant to furnish an abstract showing merchantable title to all the property sold to plaintiffs on August 1, 1964 or within six months thereafter. He either failed, refused, neglected, or was unable

to comply. His right to payments under the contract was dependent upon his compliance. It was a material and essential provision of the agreement. As stated in Vol. 2, Black on Rescission and Cancellation, § 427, p. 1103 "When a vendor of land, who has bound himself to convey at a given time or on performance of stipulated conditions, is unable to give a good title to the property when called upon to do so, either because he never held the title or because he has failed to acquire a title which he expected to acquire or because he has been unable to clear the title from clouds or hostile claims, the purchaser will be entitled to abandon the contract and refuse to make payment of the price, or, if he has made a partial payment, he will be entitled to rescind the contract and recover back what he has given." See also SDCL 53-11-2 subsections (2) and (4).

■ Furthermore, there was an obvious partial failure of consideration in that defendant agreed to sell and put plaintiffs in possession of 5th Avenue Southwest and the West Half of Greenwood Street on August 1, 1964. This was beyond his authority. He had no conveyable property or possessory rights, except as an abutting owner, in Greenwood Street or 5th Avenue. Until those streets were actually vacated by the City of Aberdeen plaintiffs acquired nothing of value from defendant so far as their use was concerned.

■ The rescission in this case was complete when plaintiffs gave notice of their rescission, refused to make further payments, and offered to tender back everything of value received under the contract.

■ As a condition to rescission "the party rescinding a contract must restore to the other party everything of value which he has received from him under the contract". SDCL 53-11-5. Therefore, the decree of rescission in this case should require plaintiffs to account and pay for the reasonable value of their use, occupation and possession of the trailer court since August 1, 1964 as an offset against their right to recover payments made under the contract. In this respect see Larson v. Thomas, 51 S.D. 564, 215 N.W. 927, 57 A.L.R. 1246. Damages for

the alleged breach of contract is not an issue and in the accounting on rescission plaintiffs cannot claim such damages as an offset.

Reversed.

BIEGELMEIER, P. J., and ROBERTS, J., concur.

RENTTO, J., dissents.

HOMEYER, J., concurs in dissent.

RENTTO, Judge (dissenting).

The judgment appealed from awarded plaintiffs a recovery of $1.00, being the amount of the jury verdict on their cause of action for damages arising from defendant's breach of the contract for sale. It also granted defendant's request for strict foreclosure of the contract, allowing the plaintiffs a period of ten days in which to pay defendant the sum of $29,106.81, in default of which defendant was entitled to immediate possession of the premises. No mention was made therein of a denial of plaintiffs' request for a rescission.

On the rescission feature of this litigation the only finding made by the court is this one:

> "That plaintiffs discovered the alleged defect in the title to the real property described in the abstract of title received in evidence as Exhibit '9', in April of 1965, and did not elect to rescind the contract for deed, remaining in possession and collecting the rents on the property, from that period until April of 1967, when plaintiffs elected to rescind the contract."

Concerning this phase of the case it concluded:

> "That plaintiffs are not entitled to a rescission of the contract for deed executed on or about August 15, 1964,

by reason of their failure to rescind timely upon discovery of the alleged fraud as to Greenway Street and Fifth Avenue and are estopped from asserting such right to rescind, having been in the possession of the property, collecting the rents and profits from same, for a period of two and one-half years."

The court found further that at the time of trial the defendant had merchantable title to the property and was ready, willing and able to perform his obligations under the contract.

Pursuant to SDCL 1967, Ch. 53-11, a party may unilaterally rescind a contract by notifying the other party of his election to do so and offering to restore everything of value that he has received. He may thereafter bring an action to enforce rights arising therefrom. This is a law action and is often referred to as an action on a rescission. It is not to be confused with an action for a rescission provided for in SDCL 1967, Ch. 21-12. Sweeney v. United Underwriters' Co., 25 S.D. 1, 124 N.W. 1107; Purcell v. International Harvester Co., 37 S.D. 517, 159 N.W. 47; Sabbagh v. Professional & Business Men's Life Ins. Co., 79 S.D. 615, 116 N.W.2d 513; Main v. Professional & Business Men's Life Ins. Co., 80 S.D. 288, 122 N.W.2d 865. The latter proceeding is on the equity side of the court. In it a notice prior to the commencement of the action is not necessary and rescission is affected by the court's decree.

The category into which this action falls is not clear from the trial record. There are indications that it was treated as an action on a rescission and also that it was regarded as an action for a rescission. It seems to me that the majority opinion views it as an action on a rescission. If it is, then in order to maintain it, the plaintiffs must prove that they unilaterally rescinded the contract prior to its commencement by serving the required notice and offering to restore. Hegge v. Hegge, 44 S.D. 555, 184 N.W. 800. It is doubtful that the letter of April 25th indicated that plaintiffs had elected to rescind, but be that as it may, one of the essentials of such rescission is that it be done promptly. SDCL 1967 53-11-4.

As to the matter of notice the court found that it was not timely and for that reason held that plaintiffs were not entitled to a rescission of the contract. The majority in reversing this action of the trial court has to hold that the court's finding is clearly erroneous. SDCL 1967, 15-6-52(a). In this I am unable to concur.

If the action is an equitable one for a rescission, the finding of untimeliness could justify the trial court's holding denying rescission. The general rule seems to be that circumstances incident to a delay in bringing a suit for rescission may render it inequitable to grant relief. 12 C.J.S. Cancellation of Instruments § 51; 13 Am.Jur.2d, Cancellation of Instruments, § 44. This record furnishes ample support for so holding, especially in view of the fact that defendant in his counterclaim offered to perform and at the time of trial was ready, willing and able to perform. SDCL 1967 21-50-2. See Moter v. Hershey, 48 S.D. 493, 205 N.W. 239, and Walsh v. Bellamy, 68 S.D. 291, 2 N.W.2d 102.

It is generally held that a suit for damages and one for restitution for breach of contract are alternative remedies. Restatement of the Law—Contracts, § 381. When one seeks damages he seeks to enforce the contract whereas restitution is based on its rescission. Ordinarily both are not available as remedies for a single injury by breach of contract. Corbin on Contracts, Vol. 5A, § 1223. The majority opinion by now allowing rescission is, in effect, awarding relief which plaintiffs elected to seek from the jury but was denied them when only nominal damages were awarded. The damages sought and not allowed included amounts paid on the contract, plus interest, closing expenses, and loss of profits.

Accordingly, I dissent.

HOMEYER, J., concurs in this dissent.