**Gary NIELSEN and Diana M. Nielsen, d/b/a Noah's Critters, Plaintiffs and Appellants,**

**v.**

**Terrence W. McCABE and Cynthia M. McCabe, d/b/a Noah's Critters of Watertown, South Dakota, and Oscar Nygaard, Defendants and Appellees.**

**No. 16318.**

Supreme Court of South Dakota.

Argued March 21, 1989.

Decided June 28, 1989.

Daniel R. Fritz of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, for plaintiffs and appellants.

Paul I. Hinderaker of Austin, Hinderaker, Hackett & Hopper, Watertown, for defendants and appellees, Terrence W. McCabe and Cynthia M. McCabe.

James C. Roby of Green, Schulz, Roby & Ford, Watertown, for defendant and appellee, Oscar Nygaard.

MORGAN, Justice.

Gary and Diana Nielsen (Nielsen) appeal from a judgment entered against them in their unlawful detainer action against Terrence and Cynthia McCabe (McCabe) and from a declaratory judgment holding that their lease agreement with Oscar Nygaard (Nygaard) was null and void. We affirm in part, reverse in part, and reverse and remand in part.

In September 1978, Nielsen opened a pet store in Watertown in a premises leased

from Helen Paulis. The store was a complete pet shop with a full line of inventory, furniture, fixtures and equipment, all of which were owned by Nielsen. The store was run by a manager as Nielsens also operated pet shops in Aberdeen and Huron. Nielsen's line of stores were all named "Noah's Critters," but the name was not registered in accordance with the franchising statutes, SDCL ch. 37–5A.

A friendship developed between Nielsen and McCabe and on April 27, 1979, the parties signed an agreement wherein McCabe leased from Nielsen the real property and "premises" of Noah's Critters located in Watertown. Pursuant to this agreement, McCabe sublet the Paulis building, purchased Nielsen's inventory of pets and supplies, leased fixtures and was permitted to use the name "Noah's Critters" for a term of five years. McCabe was to make three payments of $1,000 each, plus a percentage based upon gross income from the business.

McCabe took over the store, paid rent, utilities, telephone, and advertising, purchased insurance, and acquired a sales tax license. In March 1981, the Paulis building burned. McCabe negotiated a lease with Nygaard but a written document was never signed. McCabe operated the pet store at the Nygaard property through April of 1984.

The Nielsen/McCabe agreement expired on April 27, 1984. McCabe notified Nielsen that he did not intend to renew the agreement. Nielsen then contacted Nygaard and signed a written lease for the store building. Subsequently, Nielsen commenced an action to evict McCabe from the Nygaard property. Nygaard was joined as an indispensable party and sought a determination that the Nielsen/Nygaard lease was null and void. McCabe tendered a return of Nielsen's fixtures and counterclaimed, seeking rescission of the 1979 agreement, plus actual and punitive damages.

The trial court held that the Nielsen/Nygaard lease was null and void because of fraud, mistake and lack of mutual consent. Further, that the Nielsen/McCabe agreement was a franchise agreement that McCabe was entitled to rescind because Nielsen had failed to register the franchise pursuant to SDCL 37–5A–6, and because Nielsen breached the franchise agreement. Having concluded that the agreement was a franchise and McCabe was entitled to rescind, the trial court determined damages. McCabe was allowed to recover from Nielsen all payments made under the franchise agreement, attorney fees incurred in defending the action, and prejudgment interest. Nielsen was awarded possession and return of the fixtures and equipment located in the store, together with fair rental value for their use, certain remodeling expenses incurred by Nielsen, plus prejudgment interest.

On appeal, Nielsen raises the following issues:

(1) Whether the Nielsen/Nygaard lease was a binding contract entitling Nielsen to possession of the real property.

(2) Whether the Nielsen/McCabe agreement is a lease, not a franchise.

(3) Whether McCabe is entitled to rescission of the Nielsen/McCabe agreement when he failed to raise the issue until after the agreement terminated by its own terms.

(4) Whether the damage award and the judgment granting McCabe attorney fees and costs are supported by the evidence

(5) Whether the trial court erred in awarding McCabe prejudgment interest.

We first set out our standard of review. A trial court's finding of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. SDCL 15–6–52(a). "In applying this standard, this court will not overturn the trial court's decision unless, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." *Smith v. Sponheim*, 399 N.W.2d 899, 901 (S.D.1987); *Wiggins v. Shewmake*, 374 N.W.2d 111, 114 (S.D.1985).

■ As his first issue, Nielsen contends that the lease agreement with Nygaard was a binding contract entitling him to the possession of the real property. He cites no authority for his position. Failure to cite supporting authority is a violation of SDCL 15–26A–60(6). Therefore, this issue is deemed waived. *Kanaly v. State ex rel. Janklow*, 403 N.W.2d 33 (S.D.1987); *Kostel Funeral Home, Inc. v. Duke Tufty Co.*, 393 N.W.2d 449 (S.D.1986). We affirm the trial court as to this issue.

■ As his second issue, Nielsen contends that the trial court erred in holding that the Nielsen/McCabe agreement was a franchise. He argues that by its terms the agreement is a lease and not a franchise. Further, that SDCL 37–5A–2 provides that a business operated on leased premises is not a franchise. We disagree.

SDCL 37–5A–2 provides:

As used in this chapter, the term 'franchise' does not include any business which is operated under a lease *on the premises of the lessor* as long as such business is incidental to the business conducted by the lessor on such premises, including, without limitation, leased departments and concessions. (Emphasis added.)

Nielsen fails to explain how this provision is relevant in this case. At the inception of the contract between the parties, Nielsen had a leasehold interest in the Paulis property, he did not have an interest in fee in the premises. Further, Nielsen had a number of pet stores in neighboring communities. McCabe leased one of his pet stores, and pursuant to the agreement, continued to conduct business under Nielsen's name, "Noah's Critters." We find SDCL 37–5A–2 inapplicable to these facts.

■ Next, we must determine whether the agreement was a franchise, as a matter of law. In doing so, we look at the substance of the agreement rather than its form. SDCL 37–5A–1 provides:

As used in this chapter, unless the context clearly requires otherwise, 'franchise' means contract or agreement, either express or implied, whether oral or written, for a definite or indefinite period, between two or more persons:

(1) By which a franchisee is granted the right to engage in the business of offering or distributing goods or services using the franchisor's trade name, trade-mark, service mark, logotype, advertising, or other commercial symbol of related characteristics;

(2) In which the franchisor and franchisee have a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement or otherwise; and

(3) For which the franchisee is required to pay, directly or indirectly, a franchise fee.

SDCL 37–5A–3 provides:

As used in this chapter, unless the context clearly requires otherwise, 'franchise fee' means any fee or charge that a franchisee or sub-franchisor is required to pay or agrees to pay for the right to enter into a business or to continue a business under a franchise agreement, including, but not limited to, the payment either in lump sum or by installments of an initial capital investment fee, any fee or charges based upon a percentage of gross or net sales whether or not referred to as royalty fees, any payment for goods or services, or any training fees or training school fees or charges.

While the Nielsen/McCabe agreement does not contain the word "franchise," it is clear that it is a franchise agreement pursuant to SDCL 37–5A–1. In paragraph one of the agreement, McCabe was granted the right to use Nielsen's trade name, and insignia as well as his advertising and merchandizing methods. SDCL 37–5A–1(1). Both Nielsen and McCabe invested their time and money into the business. In paragraph nine, McCabe agreed to furnish statements, reports and other documents pertaining to the operation of the business. In paragraph ten, Nielsen reserved the right to inspect merchandise, inventory and services rendered. Clearly, both had a community of interest in the marketing of pets. SDCL 37–5A–1(2). Furthermore, the agreement provided for a "fee" to be paid

in three installments, "as a fee for the use of the 'NOAH'S CRITTERS' name, the fixtures, gondolas, tanks, cages, and grooming equipment, furnished ... and all of the commercial advantages created herein and related thereto, and, thereafter, a fee of five percent (5%) of the total gross sales of 'NOAH'S CRITTERS' made by [McCabe] on a monthly basis." SDCL 37–5A–1(3) and SDCL 37–5A–3. It is our opinion that the Nielsen/McCabe agreement was a franchise agreement as a matter of law and we affirm the trial court on this issue.

Having concluded that this is a franchise as a matter of law, we now turn to the issue of whether McCabe was entitled to rescind the agreement. The trial court held that the agreement was void because Nielsen failed to register the franchise and voidable because Nielsen breached the agreement. Nielsen contends that the trial court erred in ho¹ding that a violation of franchise statutes automatically allows rescission. Further, that McCabe is not entitled to rescission having failed to comply with established rules of rescission (SDCL 53–11–4), since they did not raise rescission until the agreement between the parties expired by its own terms.

■ In support of his proposition that violation of franchise statutes does not automatically allow rescission, Nielsen cites *Martschinske v. Olympic Styles, Inc.*, 628 F.Supp. 231 (D.S.D.1984) (*affirmed* 774 F.2d 1172 (8th Cir.1985); *Northwest Realty Co. v. Carter*, 338 N.W.2d 669 (S.D.1983); *Bagel Enterprises, Inc. v. Baskin & Sears*, 56 Md.App. 184, 467 A.2d 533 (1983); *Kemp v. Weber*, 180 Md. 362, 24 A.2d 779 (1942); *Clapp v. Peterson*, 327 N.W.2d 585 (Minn.1982); and *Fedorenko v. Rudman*, 71 N.W.2d 332 (N.D.1955). A comparative analysis of these cases persuades us that McCabe must comply with established rules of rescission and he is not automatically entitled to rescission upon violation of franchise filing statutes. "[T]he Legislature did not intend franchise agreements to be void in their inception because the franchisor failed to register the offer." *Martschinske*, 628 F.Supp. at 237. "More significantly, this court is also persuaded that

'the rescission remedy provided by the franchise investment law is the ordinary remedy of rescission.'" *Id.* (citing *Fargo Biltmore Motor Hotel Corp. v. Best Western International, Inc.*, 563 F.Supp. 1022, (D.N.D.1983) (*affirmed* 742 F.2d 459 (8th Cir.1984))).

■ We must now determine whether McCabe has waived his right to rescind the agreement by his failure to comply with the established rules of rescission. SDCL 53–11–4 provides:

The party rescinding a contract must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, undue influence, or disability, and is aware of his right to rescind.

Whether the rescinding party acted with due promptness is a question of law. *Saunders v. Farmers' & Merchants' Nat. Bank of Milbank*, 61 S.D. 261, 248 N.W. 250 (1933). "A party to a contract who, after discovery or knowledge of facts which would entitle him to rescind, treats the contract as a subsisting obligation and leads the other party to believe that the contract is still in effect waives his right to rescind." *Kane v. Schnitzler*, 376 N.W.2d 337, 340 (S.D.1985) (quoting 17 Am.Jur.2d *Contracts* § 489 (1964)).

In this case, McCabe testified that he was aware of his rights under the contract prior to signing the agreement. He specifically discussed the agreement with an attorney hired for the purpose of advising him as to the interpretation and binding effect of the agreement. McCabe freely entered into the agreement and received all the benefits of the contract. It was not until five years later, when the agreement had expired on its own terms, that McCabe raises this issue. On these facts, as in *Kane*, McCabe has waived his right to rescission through his conduct. His lack of promptness, in effect, affirmed the contract between the parties. We reverse as to this issue.

■ Finally, we examine Nielsen's issues on damages, attorney fees and prejudgment interest. Because we reverse the decision on rescission, we must consequently

reverse the damage awards so far as they restore the sums paid by McCabe for franchise fees, fixed rental on the personal property used by McCabe, and such other awards as arise directly from the rescission determination. We note that even though McCabe waived his right to the relief of rescission, he may nevertheless sue for damages caused by Nielsen's failure to comply with the franchise laws. SDCL 37–5A–83. SDCL 37–5A–85 authorizes the trial court to award "actual" damages together with costs and disbursements plus reasonable attorney fees. At the trial court's discretion, treble damages may also be awarded.

We therefore reverse the awards of damages to Nielsen and McCabe, attorney fees and prejudgment interest, and remand the case to the trial court for reconsideration of those issues in light of our decision on the rescission determination. We affirm the trial court on the issue of the Nielsen/Nygaard lease and the costs taxed.

We affirm in part, reverse in part, and reverse and remand in part.

All the Justices concur.