Donald P. KNUDSEN and Lisa
K. Knudsen, Plaintiffs and
Appellants,

v.

Woodrow H. JENSEN and Dianne
Jensen, Defendants and
Appellees.

No. 18299.

Supreme Court of South Dakota.

Argued Nov. 29, 1993.

Decided Aug. 31, 1994.

Rehearing Denied Oct. 7, 1994.

Patrick Duffy of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for plaintiffs and appellants.

John Stanton Dorsey of Whiting, Hagg & Hagg, Rapid City, for defendants and appellees.

AMUNDSON, Justice.

Donald and Lisa Knudsen appeal from a decision of the trial court denying them rescission of a house sale with Woodrow and Diane Jensen. We affirm.

### FACTS

Plaintiffs Donald and Lisa Knudsen (Knudsens) purchased a home from the defendants Woodrow and Diane Jensen (Jensens). Unbeknownst to the parties, the home had been constructed on inadequate underground support causing structural defects which were found to be latent at the time of the sale. This defect was caused by the building contractor's gross negligence in preparing the ground supporting a wood foundation. Jensens acquired the home in 1979 from a prior owner and lived there until June of 1988 when it was sold to Knudsens.

In April 1988, Knudsens contacted a realtor and arranged to see the Jensen residence. During the showing, Knudsens took a fifteen minute walk through the home. A few days later, on April 6, 1988, Knudsens made an offer to purchase the home. Jensens accepted. Knudsens were first-time home buyers.

In mid-April, Knudsens were given a listing disclosure information sheet showing that Jensens reported no problems with the house. After signing a purchase agreement,

Mr. Knudsen became aware the house was built on a wooden foundation. Jensens had not disclosed this to Knudsens; rather, Mr. Knudsen learned of this fact from one of the partners in the law firm where he worked. After learning of this fact, Knudsen stopped by the house once again for a brief tour through the home. On this second tour, Knudsen noticed a crack in the basement floor which Mr. Jensen acknowledged by stating that "you see those in all basements." Knudsen also asked Jensen about the wooden basement. Jensen commented how dry the basement had stayed and that he attributed the home's energy efficiency to the basement. Knudsen asked no other questions about the wooden foundation.

Knudsens testified that shortly after moving into the home they began to notice symptoms of structural defects. They discovered the kitchen floor was not level, things spilled on the floor or countertops would roll in the direction of the downhill slope. They noticed that items which were hung level on the walls looked uneven when compared to the line of the ceiling or the floor. Evidence showed this slope was caused by settling. During their occupancy, Jensens performed the normal repair and maintenance that would be expected of a homeowner. The trial court found the settling which occurred during Jensens' occupancy was so gradual that they did not recognize it. Knudsen testified that the house had a "subtle slope not readily observable." The evidence showed at the time of the sale neither party knew the house had an inadequate foundation.

Approximately one year later, in mid-August, 1989, Knudsen discovered there was a void of eighteen to twenty-four inches between the bottom of the basement floor and the dirt underneath the floor. After viewing this condition, Knudsen immediately contacted various professionals (contractors, engineers, geologists, and soil experts) to investigate the cause of the settling and what would be required to remedy its effects. This settlement has caused the foundation of the home to buckle, resulting in damage to the

home's floors, walls and ceiling. Experts opined that major reconstruction would be necessary to correct these defects. Knudsens have received estimates for repairing the home ranging from $7,500 to $31,000.

After receiving the estimates, Knudsens offered to rescind the contract by returning everything of value they received under the contract. Jensens declined. Knudsens initiated this lawsuit against Jensens on December 5, 1990, approximately two and one-half years after Knudsens initially discovered the sloped floor.

Knudsens claimed fraud, deceit, misrepresentation, mutual mistake, and failure of consideration. At trial, Knudsens were requesting the trial court rescind the contract; they dropped a claim for damages.[1] The trial court found in favor of Jensens on all claims. Knudsens appeal.

### ISSUES

1. Should Knudsens be granted equitable rescission for mutual mistake?

2. Should Knudsens be granted equitable rescission for material failure of consideration?

3. Did Knudsens fail to mitigate their damages?

### DISCUSSION

■ An action for rescission may be brought as a legal action pursuant to SDCL ch. 53–11, or as an equitable action pursuant to SDCL ch. 21–12. "If the action is in equity, the rescission is accomplished by court decree." *Jones v. Bohn*, 311 N.W.2d 211, 213 (S.D.1981). Knudsens brought this action seeking equitable rescission for mutual mistake. Therefore, our first step is to review whether there was a mistake entertained by one or both parties to this contract and, if so, the significance of that mistake.

■ SDCL 53–4–9 defines mistake of fact as,

---

1. "Generally, equity will not take jurisdiction to declare a rescission where a party has an adequate and complete remedy at law." *Northwest Realty Co. v. Carter*, 338 N.W.2d 669, 672 (S.D.

1983). The damage claim was dropped in this case and Jensens have not raised adequate remedy at law issue. Therefore, this issue will not be addressed.

[A] mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in:

(1) An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or

(2) Belief in the present existence of a thing material to the contract which does not exist, or in the past existence of such a thing which had not existed.

See *McDonald v. Miners & Merchants Bank Inc.*, 310 N.W.2d 591 (S.D.1981). Restatement (Second) of Contracts § 151, p. 383, states: "A mistake is a belief that is not in accord with the facts." With these definitions to guide us, we review the trial court's ruling. A trial court's findings of fact will not be disturbed unless shown to be clearly erroneous. *Holmes v. Couturier*, 452 N.W.2d 135 (S.D.1990).

■ The trial court's findings show neither Jensens nor Knudsens were aware of the foundation defect at the time of the sale. Both parties entered the contract under the mistaken assumption that the home was structurally sound. Jensens testified they knew nothing about the inadequate substructure support at the time of the sale. Similarly, the Listing Disclosure Sheet completed by Jensens shows they had never experienced a "problem" with any structural elements of the house. A letter from Jensens to Knudsens states they believed the house was sound and had no defects. Knudsens asked about the fitness of the wooden foundation and were told that Jensens had encountered no problems with the wood foundation and it was possibly the reason the house was so energy efficient. Knudsens entered the contract under the assumption that the house was structurally sound.

Despite the parties' ignorance, it is undisputed that the basement was inadequately supported at the time of sale and the parties were operating under a mutual mistake of fact. Therefore, the trial court's finding that no mutual mistake existed is not supported by the evidence.

■ This mistake alone does not automatically warrant rescission of the contract. "The equitable relief of rescission, being extraordinary, should never be granted, except where the evidence is clear and convincing." *Vermilyea v. BDL Enterprises, Inc.*, 462 N.W.2d 885, 888 (S.D.1990) (citing *Windedahl v. Harris*, 37 S.D. 7, 156 N.W. 489 (1916)).

■ Before rescission can be granted, we must determine whether the mistake had a material effect on the contract.[2] *Beatty v. Depue*, 78 S.D. 395, 103 N.W.2d 187 (1960). "Whether a mistake concerns a thing material to the contract must of necessity depend upon the facts and circumstances in the situation being considered.... It must be so fundamental in character that because of it the minds of the parties did not meet." *Beatty*, 78 S.D. at 403, 103 N.W.2d at 191 (citing *School District of Scottsbluff v. Olson Construction Co.*, 153 Neb. 451, 45 N.W.2d 164 (1950)). This court has recognized the following test of materiality:

'A mistake as to a matter of fact, to warrant relief in equity, must be material, and the fact must be such that it animated and controlled the conduct of the party. It must go to the essence of the object in view, and not be merely incidental. The court must be satisfied, that *but for the mistake the complainant would not have assumed the obligation from which he seeks to be relieved.*'

*Beatty*, 78 S.D. at 403–04, 103 N.W.2d at 191–92 (quoting *Grymes v. Sanders*, 93 U.S. 55, 23 L.Ed. 798 (1876)) (emphasis added).

■ At trial, Mr. Knudsen testified that he would not have purchased the house had he known the house was constructed on inadequate support. Jensens acknowledge nobody would purchase the home if they knew

---

**2.** The Restatement (Second) of Contracts, § 152, page 385 describes when a mistake of both parties makes a contract voidable:

(1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154. (2) In determining whether the mistake has a material effect on the agreed exchange of performances, account is taken of any relief by way of reformation, restitution, or otherwise.

of the latent defect. The evidence presented at trial clearly indicates the mistake was material.

■ The next step in determining whether a party has a right to equitable rescission of a contract for mutual mistake is to ascertain who bears the risk of mistake. Restatement (Second) of Contracts § 152 page 385. In *Holmes v. Couturier,* this court required that "a party seeking rescission based upon mistake of fact must have exercised reasonable diligence." 452 N.W.2d at 137. The trial court determined Knudsens had failed to make an adequate inquiry and examination of the property. The trial court held " '[a] mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake [it] must not result from the want of such care and diligence as would be exercised by a person of reasonable prudence under the circumstances' " *Beatty,* 78 S.D. at 402, 103 N.W.2d at 191.

■ The trial court found this house had a "latent and hidden defect" and Knudsens "should have been more cautious." The trial court's conclusion that Knudsens' failure to conduct a reasonable inquiry is grounds for responsibility is inconsistent with the finding of a latent and hidden defect. A latent defect is "[o]ne which would not be discovered by reasonable and customary observation or inspection." Blacks Law Dictionary, 6th ed. (1990). Therefore, even if Knudsens exercised reasonable diligence in inspecting the condition of the property they would not have detected the defect. *Holmes,* 452 N.W.2d at 137. It is clear a reasonable inspection by a layman would not have disclosed the faulty foundation, and the record does not indicate that a purchaser making a reasonable investigation should employ an expert to investigate the premises. *Davey v. Brownson,* 3 Wash.App. 820, 478 P.2d 258, 261 (1970). Consequently, the trial court's decision is flawed.

> [I]f a reasonably diligent investigation would not have informed the party of the facts or served to awaken him to the existence of the misapprehension, the opportunity to investigate and determine does not avoid the consequences of the mistake.

91 C.J.S. Vendor & Purchaser § 51 p. 908 (1955); *Newton v. Tolles,* 66 N.H. 136, 19 A. 1092 (1890).

■ In light of this latent and hidden defect, this court must now determine who bears the risk of mistake.

> A party bears the risk of a mistake when
> . . .
> (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
> (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

Restatement (Second) of Contracts § 154.

Jensens argue that Knudsens had only limited knowledge with respect to the condition of the house, but treated that limited knowledge as sufficient and therefore should bear the risk of mistake under Restatement (Second) of Contracts § 154(b). Jensens presented FHA mortgage papers which warned Knudsens to "be sure the house is in acceptable condition before signing a purchase agreement." The FHA also warned, "[y]ou should inspect the property carefully. If you need help a private inspection service can be hired in many localities." Although this is not a binding condition or requirement it shows Knudsens were aware of a potential risk.

The comment following Restatement (Second) of Contracts § 154(b) states:

> Even though the mistaken party did not agree to bear the risk, he may have been aware when he made the contract that his knowledge with respect to the facts to which the mistake relates was limited. If he was not only so aware that his knowledge was limited but undertook to perform in the face of that awareness, he bears the risk of the mistake. It is sometimes said in such a situation that, in a sense, there was not mistake but 'conscious ignorance.'

This comment seems to place the risk of mistake squarely with Knudsens. However, Restatement § 157 shows that Knudsens' ac-

tions do not prevent them from avoiding the contract.

> A mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation under the rules stated in this Chapter, unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.

Restatement (Second) of Contracts § 157.

As stated above, the defect would not have been discovered had Knudsens made a reasonable investigation of the house's structural integrity. There has been no showing that Knudsens acted in bad faith. In fact, the trial court found "all of the witnesses were honest and forthright and were people of unquestionable integrity." "This court gives due regard to the trial court to judge the credibility of witnesses." *O'Connor v. King*, 479 N.W.2d 162, 164 (S.D.1991). Therefore, Knudsens' failure to discover the latent defect cannot be a basis for denying them rescission.

■■■ Restatement (Second) of Contracts § 154(c) provides for risk to be allocated by the court "on the ground that it is reasonable in the circumstances to do so." Rescission is an equitable remedy which is granted only in the sound discretion of the court. *Jones*, 311 N.W.2d at 213. "A court need ·not grant rescission in every case in which the mutual mistake relates to a basic assumption and materially affects the agreed performance of the parties." *Lenawee County Bd. of Health v. Messerly*, 417 Mich. 17, 331 N.W.2d 203, 210 (1982).

> In cases of mistake by two equally innocent parties we are required in the exercise of our equitable powers to determine which blameless party should assume the loss resulting from the misapprehension they shared. Normally that can only be done by drawing upon our 'own notions of

what is reasonable and just under all the surrounding circumstances.'

*Lenawee County Bd. of Health*, 331 N.W.2d at 210 (Mich.1982) (quoting *Hathaway v. Hudson*, 256 Mich. 694, 239 N.W. 859, 862 (1932)).

■■■ One of the reasons given by the trial court for denying the equitable relief Knudsens' requested was they failed to timely commence the action for rescission. Where the facts are not in dispute, the question of whether a rescinding party acted with due promptness is a question of law. *Saunders v. Farmers & Merchants Nat. Bank*, 61 S.D. 261, 265, 248 N.W. 250, 252 (1933) (citing Black on Rescission, § 547); *Nielsen v. McCabe*, 442 N.W.2d 477 (S.D.1989). "What may be a prompt action in one case would not be so in another case." *Id.* A trial court's decision is presumed correct and we will not seek reasons to reverse. *Insurance Agents, Inc. v. Zimmerman*, 381 N.W.2d 218, 219 (S.D.1986) (citations omitted).

■■■ "The party rescinding a contract must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, undue influence, or disability, and is aware of his right to rescind." SDCL 53–11–4. Knudsens possessed the property for about two and one-half years before commencing this action for rescission.[3] By that time, Jensens had relocated to Sheridan, Wyoming. "It is apparent that the element of time is not conclusive in and of itself. The further query must be whether the delay was long enough to prejudice the other party." *Kane v. Schnitzler*, 376 N.W.2d 337, 340 (S.D.1985). The trial court concluded that the two and one-half year hiatus was prejudicial to Jensens and therefore disallowed the rescission. The trial court must determine if reasonable diligence was exercised based upon the facts of each particular case. "[U]nder the facts of this case we do not think it can be said that the trial court erred in holding that the rescission had not been

---

**3.** In the case of a party who has the power of avoidance for … mistake, [time] does not begin to run until he knows ∶.. or has reason to know of a non-fraudulent misrepresentation or mistake. However, in determining whether a party acted within a reasonable time once he was

expected to do so, the fact that a considerable period of time had elapsed after the original transaction is significant.

Restatement (Second) on Contracts § 381, cmt. b.

made promptly." *Saunders,* 61 S.D. at 265–66, 248 N.W. at 252.

Knudsens also claim the trial court erred in denying equitable rescission for material failure of consideration under SDCL 53–11–2(2). We will not consider this claim because we have affirmed the trial court's decision that Knudsens failed to act with due promptness as required by SDCL 53–11–4.

This conclusion makes it unnecessary for us to address the mitigation of damages issue. The trial court's decision is affirmed.

MILLER, C.J., and HENDERSON, J., concur.

WUEST and SABERS, JJ., concur in part and dissent in part.

WUEST, Justice (concurring in part and dissenting in part).

I concur with the majority that there was mutual mistake regarding a basic assumption—that the substructure was adequate to support the home. However, I dissent on the issue of whether the Plaintiffs' rescission was promptly made and whether a delay, if any, was long enough to prejudice the Defendants, and thereby, dissent in the result.

The amount of time elapsed before the attempted rescission is not necessarily determinative of whether a contract has been rescinded promptly. *Kane v. Schnitzler,* 376 N.W.2d 337, 340 (S.D.1985). The important consideration is " 'whether the period has been long enough to result in prejudice to the other party.' " *Id.* (quoting 17 Am.Jur.2d Contracts § 510, p. 992).

> Where the facts are without dispute, the question of whether the rescinding party acted with due promptness is one of law for the court. Black on Rescission, § 547. No fixed rule can be laid down as to time in which one must rescind. What may be a prompt action in one case would not be so in another case.

*Saunders v. Farmers & Merchants Nat'l Bank,* 61 S.D. 261, 265, 248 N.W. 250, 252 (1933).

In *Beatty v. Depue,* 78 S.D. 395, 103 N.W.2d 187 (1960), this court held that a lapse of one and one-half years was timely under the circumstances of that case involving land boundaries. The court noted that although purchasers previously had discovered they did not own a portion of the southern end of their land, it was the discovery some months later of a gap in the northern boundary that was "the important ground of their reason for rescinding." *Id.* 78 S.D. at 405, 103 N.W.2d at 192.

In *Halvorson v. Birkland,* 84 S.D. 328, 171 N.W.2d 77 (1969), a delay of two years did not defeat purchasers' right to rescind a contract for sale of a trailer court. *See also O'Connor v. King,* 479 N.W.2d 162 (S.D. 1991).

I believe that the rescission here was promptly made. The majority has defined the time period between knowledge of the defect and notice of rescission as two and one-half years. However, the defect giving grounds for rescission occurred not when the "subtle slope" was first noticed by Plaintiffs, but when the mistake as to the parties' basic assumption of an adequate substructure was discovered—in August 1989 when Plaintiffs found the eighteen to twenty-four inch void between the basement floor and the dirt underneath the floor. Discovery of this void was "the important ground of their reason for rescinding." *Beatty,* 78 S.D. at 405, 103 N.W.2d at 192. At this point, Plaintiffs did not sit on their rights but acted diligently and reasonably to discover the cause by contracting engineers, geologists, contractors, and soil specialists. The Supreme Court of North Dakota, discussing *Beatty,* stated "once a party has the facts, the party is required to find out what legal significance results.... The party, in effect, has a two-fold responsibility to find out what the facts actually are and then find out what legal rights result from those facts...." *Berg v. Hogan,* 322 N.W.2d 448, 453 (N.D.1982). Just one year passed between Plaintiffs' discovery of the void and Plaintiffs' offer to rescind the contract with Defendants. Following Defendants' refusal, Plaintiffs promptly initiated this lawsuit.

As this court noted in *Kane,* 376 N.W.2d at 340, promptness in rescission is to be determined not necessarily by the amount of time elapsed but whether the delay has prejudiced the non-rescinding party.

It is a general rule ... that a right to rescind must be exercised promptly or within a reasonable time on discovery of the facts from which it arises, particularly where a party may be injured by delay, so that rescission may be accomplished at a time when the parties may still be restored, as nearly as possible to their original positions.... [L]apse of time is not the sole consideration in determining diligence.

17A C.J.S. § 431, p. 529–30 (1963). It is not the defect giving rise to grounds for rescission which must be examined in determining prejudice to Defendants, but the delay, if any, in Plaintiffs' noticing Defendants of an attempt to rescind following discovery of the defect. Here, no prejudice to Defendants caused by delay has been shown. Expert testimony at trial indicated there has been no change in repair costs between the time of discovery and the time of trial and that the defect, unknown to both parties and existing at the time of sale, has remained unchanged to the time of trial. Defendants have obtained employment and moved to another state but, even if this can be considered prejudice, it was not caused by any delay on Plaintiffs' part, these plans being made by Defendants prior to closing on the sale of their home.

Plaintiffs acted promptly following discovery of the defective substructure in determining the cause and noticing Defendants of their attempt to rescind the parties' contract. Further, even if delay is found, there is no evidence of prejudice as required by prior case law of this court. Thus, I dissent on this issue and dissent in the result.

SABERS, Justice (concurring in part and dissenting in part).

I agree with Justice Wuest's dissent on the basis that plaintiffs' notice of rescission was sufficient and timely and because there was *no showing* of any prejudice on the part of the defendants therefrom. We should reverse and remand for a new trial.